Zuniga-Perez v. Jefferson B. Sessions III. Thank you. I'm here today to ask that my clients get a hearing in immigration court so they can establish the facts to suppress the evidence in this case. The petitioners in this case submitted an affidavit alleging that there was no warrant, no consent, and no lawful permission for the U.S. Border Patrol to enter their residence, seize them, and arrest three out of the four people in the residence. The government, the Department of Homeland Security, asserts that there was a New York State search warrant by the New York State police to enter the residence. I can't find that in the record, though. The warrant is not in the record. There is no warrant in the record. The only reference to the warrant is in the I-213. Okay. So there's no document that shows that there really was a warrant other than an assertion that there was? Correct. Okay.  No, there was no indication that there was a warrant. And there are a number of things in New York State law that would lead me to believe that it would be unlikely to have been a search warrant, that if there was a warrant at all, it would more likely have been an arrest warrant. The action took place at 930 at night. The officers are focused on an individual, not on contraband or drugs or weapons or papers or anything else. It wasn't an arrest warrant. It was a search warrant. Well, the I-213 alleges it was a search warrant. I'm just saying in the context of New York State law, the New York State troopers would have needed to go to a New York court to get a nighttime warrant. You have trouble believing that that would be the case. It just doesn't make sense in the context of... Does it make, and I think you were before us a few weeks ago. I was. That was a similar case. That was a car stop, but this is a residence. Does it make sense that State troopers would bring Border Patrol folks to translate to execute a search warrant? It would be interesting to know which documents they would like them to translate when they got to the residence for the documents maybe that were part of the search warrant. It doesn't make a lot of sense, First Your Honor, because translate implies a document. Interpret implies language. Of the two officers... Sometimes when people say one... One or the other. Let's presume they had an arrest warrant. The only reason why they'd go there then was to find this fellow, Doblinger. Is that how you pronounce his name? Dagoberto, I think. Because I've seen it done two different ways. The only reason would be to get him. Correct. And the arrest warrant wouldn't allow them to break in. It would allow them to seek his arrest, to take him into custody, right? Yes, and the other things that make that more likely, in their affidavit they describe knocking at the window and lights, like vehicle police lights and police demanding to be able to come into the house. That also contextually sounds much more like an arrest activity. He was charged with a sex crime, wasn't he? I think that was the underlying indication. I have a hard time understanding why they'd want a search warrant. It was confusing from my perspective as well, but that's what the... We don't know what they had because it's not in the record. Correct, and since there was never a hearing, even for the petitioners to testify or call witnesses for their side, there was no opportunity to develop the record to get any additional information. And without more information about the individual the New York State police were looking for, it's very difficult from a petitioner's perspective to try to go find a search warrant that may never have existed. We're not entitled to discovery. There's no requirement that the government come forward with evidence that might help an alien or a respondent. So if there was an error in the I-213 and it wasn't a search warrant, they have no obligation to tell me that or to even determine that because there's no discovery provisions like there is in a criminal case. So if we can't get into a courtroom to get an opportunity for a hearing, we can't get to any of those facts. We can't get them into the record for the court or for the board or for anyone else to look at a case. In regards to whether or not the respondent's affidavit presented sufficient facts to establish it was egregious, we would argue that it was a home, that it was an intentional nighttime event, that there are a number of things that make it appear pretextual. We're going just as translators. The New York State Police finished their search for the individual, determined he's not there, and then the Board of Patrol. 213 mentions Hispanic migrants. Yes, it does, but Hispanics migrants doesn't in any way indicate that there is- No, I'm suggesting that- Reasonable suspicion. He's identifying by race, which is- Yes, Your Honor. Issues of concern. Yes, the indication that they were going not to look for illegal aliens, but Hispanic migrants, is another factor in the establishment of egregiousness. Counsel, you have three minutes for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the court. Michael Heiss on behalf of the respondent, the Attorney General of the United States. Counsel, why isn't the case of Cochay written by my colleague, Judge Wesley, dispositive in this case? Cochay involved extremely different facts, involved much more egregious concerns. Maldonado, which came after Cochay, much more closely resembles these circumstances. The Supreme Court in Lopez Mendoza indicated that, yes, the exclusionary rule can apply in immigration proceedings, provided that the alien demonstrates evidence of egregious circumstances that occurred in the collection of that evidence. And egregiousness requires more than what we have here. What does it require? Conduct that, quote, shocks the conscious. That was from Maldonado. And that has been echoed throughout this Court's cases on point. What we have here is a warrant pursuant to the I-213, which is presumably reliable. Warrant by the record. You're aware of that? Correct. We have the government's word that there was a warrant. It was a search warrant or an arrest warrant or whatever. We don't know. We have the I-213 in the record, which this Court in Felserick is — It doesn't seem to make sense that it would be a search warrant executed at 10 p.m. in this context. I mean, if there were a misrepresentation about the warrant, whether it existed or what it was, would that be egregious circumstances? Whether or not it was a search warrant or an arrest warrant? Well, if they show up and say, we have a search warrant, and it really wasn't a search warrant, would that be egregiousness? This could be a little bit of a game of telephone. The I-213 is indicating that a warrant was present. It indicates a felony search warrant could be a felony arrest warrant. I've never heard of a search warrant described as a felony search warrant. I don't know. We don't have it, and that's part of the problem is we don't have it in the record. We don't know what it says. I mean, another thing of concern is it doesn't seem typical to me, and I don't know. I mean, this is something that could be explored at a hearing for state troopers to call in Border Patrol to translate, to execute a search warrant. I just don't know that that makes any sense. That has been standard practice for many years for New York State Police and other jurisdictions around the country to involve Customs and Border Patrol or ICE. Because they believe there's a possibility of there being undocumented. Exactly why they're involved is unclear. I spent . . . Does it matter if they are going in looking for undocumented aliens under the guise of executing a search warrant? Is that appropriate? If that kind of deception is present, that could be a problem. This process . . . If that kind of deception is present, would that meet the test of shocking the conscience? It's a question in this case, as far as I can discern, of efficient execution of a warrant, whether it's a search warrant or an arrest warrant. The officers were aware that, yes, known Hispanic migrants were present at this location, and that translation or interpretation might be necessary. That's just an efficient use of resources. This occurred in Clyde, New York, which is somewhat of a remote area between Rochester and Syracuse. It's not someplace where, just at any hour, you can find an interpreter ready to come help you in this instance. It's also common practice for police executing a warrant of any kind to conduct a security sweep and amass anyone present for the safety of the officers. There's no question that police officers are entitled to avoid danger where possible. That's true. I don't just get into that. This is a lot like Coetzee in some ways. The question is whether they were given permission to come in. The aliens have submitted an affidavit saying that they didn't consent to it. The search warrant, we don't know what it says, or the warrant, we don't know what it says. I don't know of an arrest warrant. Maybe they do. It's been a while since I was in state courts, but they could just break down the door. If it were a search warrant, the search warrant would be particularized as to what they could look for. I don't know that it would say illegal aliens. I strongly suspect it wouldn't. The question here is, is there enough to require a hearing? Right. And Coetzee said that the affidavit of the young individual in question in that case, saying that they didn't consent, was enough. Coetzee went well beyond. We've got an affidavit here saying they didn't consent. I don't see how we escape our prior decision. This is a late-night entry. Now, if there is a search warrant or there's a warrant, then a lot of the arguments that you have to make about the legitimacy of the fact that Border Patrol can be there or ICE agents can be there all go to whether it is or isn't egregious. But that gets developed in a hearing as opposed to us kind of prognosticating on what did or didn't happen. And so it just seems to me that once you've got an allegation of no consent and you've got officers in a residence where there's clear Fourth Amendment protections at night, it's time for a hearing. Coetzee went well beyond just consent. I know where it went. Yes, Your Honor, drafted that opinion. It was a nighttime warrantless raid at 430 in the morning. Exactly right. Exactly right. But as you and I both know, egregiousness is a combination of factors, and the question is should there have been a hearing to decide. We would have to rule as a matter of law that a raid, what was this, at 10 o'clock at night? It began at roughly 924, and they knocked on the door at roughly 10 p.m. I see. So it's at 10 o'clock at night looking for an individual to arrest him for a state crime in which Border Patrol comes along to be interpreters, probably okay, in which they go into the home for which these individuals say no one consented. I think an officer of the government going into someone's home at 10 o'clock at night without consent is egregious. And so that's the question. I mean, there are other things I agree with you in the other case that make it more egregious, but the question is should there be a hearing or not. And the simple fact of the matter is that the warrant solves a lot of your problems. The I-213 indicates that a warrant was present. It was an I-213. An I-213 is a federal officer testifying to secondhand as to what it was or wasn't, and he called it a search warrant, and I'm skeptical that it was a search warrant. But I'm not allowed. That's based on my own prior experience in life, and that's not how I should decide this case. This court in Felserick indicated that I-213s are presumed reliable, absent evidence to the contrary. There's nothing to suggest here that there was an effort to mislead anyone. One thing, if it was an arrest warrant, there's a problem, and there wasn't consent. And you yourself just told us a minute or two ago that you weren't certain what it was. I can't dispute that the warrant is not an arrest warrant. So then we can only ride the I-213 as far as it will carry us. Certainly. What we do have here are the actual facts. Do they rise to the level of egregiousness? I agree with you. Cochia goes well beyond the facts of this case. I think you're right about that. The question is, does this get closer to it? And the point of that is that Lopez Mendoza, the Supreme Court, indicated in Lopez Mendoza that for the Fourth Amendment exclusionary rule to apply in immigration cases, there must be egregious circumstances, and the reason for that is because of the nature of immigration proceedings as civil rather than criminal and the need for streamlined and efficient proceedings. Hearings are not a given. A very accurate statement of the law. And this Court, again, in Cochia, indicated that it is indeed a case-by-case inquiry. But for egregiousness to have occurred, it requires something more. It requires conscious, shocking events. And that's simply not present here. You have a warrant, whether a search warrant or an arrest warrant, or you have the possibility of consent. Rafael, in their affidavit, indicates that he opened the door. It was at a much more reasonable hour than Cochia, which was at 4.30 in the morning. There was not coercion here. They were not handcuffed until after they indicated they were illegally present. They were not held at gunpoint. The police were seeking a fugitive wanted for rape that lived with these individuals until a week prior. Asking questions of that individual is certainly a reasonable conduct by the police, and needing translation assistance to accomplish that end certainly is a logical act. Further, petitioners concede that it is reasonable for the officers to conduct this investigation that's been repeated consistently. So ultimately the question is whether or not this was an egregious circumstance, and the fact suggests it is not. Thank you, Your Honors. Thank you, Counsel. I don't take umbrage with anything that you said about the law, Counsel, and you've done it well and you wrote a good brief, okay? Thank you. Fair enough. Counsel, you have three minutes for rebuttal. Just briefly, I'm certainly not counseling in any way for New York State, but I would dispute that there's any standard policy between the New York State police and U.S. Border Patrol, and in fact, I would assert that if an additional submission was made, there would be a specific policy that they not call them to act as interpreters or translators for this purpose, and that the New York State police has an independent contract to provide that service. Not that they couldn't, but that's not the standard policy. I think the critical part from our perspective is if you can't get into the courtroom, it makes it really difficult to make the egregious argument because we don't have other ways to get evidence into the record beyond that hearing. The evidence that we would need to have more in regards to was it a search warrant, was it an arrest warrant, what happened, could only really be developed in the context of a hearing. I would also ask the Court to consider that in the I-213, for what it's worth, it describes it as a two-part process. The New York State police determined he wasn't there, and they were done, and then the Border Patrol started to ask questions. And there were actually rifles. The affidavit of the petitioner in support of the motion to suppress indicates that there were rifles. Not necessarily pointed at him, but that the officers were all armed. Thank you. Thank you. Thank you both. We'll reserve decision. Mr. Heise, are you up from D.C.? I'm sorry? Are you up from D.C.? Yes, Your Honor. Thank you.